In the Matter of the Estate of ISRAEL KLADNEVE, Deceased.

Surrogate's Court, New York County, March 16, 1929.

*L. & I. J. Joseph* [*Irving J. Joseph* of counsel], for Congregation Volin of the People of Mazvi.

*Max Guttman*, for Shendel Rothberg, next of kin.

*Joseph Slicken*, for public administrator.

O'BRIEN, S. This is a discovery proceeding instituted by the public administrator seeking to recover for the estate $600 in cash and Morris Plan certificates of the value of $900. The intestate was what is called in Yiddish a " schmorer; " he lived a miserable existence, and during the later months of his life he was paralyzed. He had a daughter in Poland who was his only next of kin, and it does not appear that he had any relations in this country other than a sister, who apparently never visited him. The only friends appear to have been two of his countrymen, Sam Platt and Aaron Pitter, who were officers of the Congregation Volin of the People of Mazvi, a religious congregation incorporated under the

laws of this State and having a synagogue at 234 East Broadway, New York city. This congregation is composed of men who originally lived in the town of Mazvi, Poland, of which place the intestate was a native. In his last illness he was taken first to Bellevue Hospital, where he stayed about two weeks, and was later taken to Beth David Hospital. He was subsequently taken from this hospital and brought to his home in Delancey street by Mr. Pitter. There Mr. Pitter and Mr. Platt visited him, and he stated that he was probably going to die in the near future, and that he wished, at his death, the aforesaid congregation to provide for his burial and purchase a lot or grave and have the usual Jewish religious services for him, since he had no son who could say the customary prayers for the dead. He stated further that he desired the congregation to engage someone to say the prayers daily called " Kadish " for a year after his death, and the annual prayers called " Yar Zeit." He wanted a monument over his grave, and as a memorial to him he instructed them to have the synagogue painted and his name placed on a tablet therein.

It appears from the testimony that a year or more before his death he gave to Mr. Platt $600 for safe keeping. When he became sick Mr. Platt brought the $600 back to him, stating that he did not need the money and wanted to repay the loan. The intestate refused to take the money, but requested Platt and Pitter to pay for his burial arrangements and the prayers out of this $600. He also stated to them that he had in his possession in a trunk $900 in Morris Plan certificates, which were to be delivered to the congregation for the purposes hereinbefore set forth.

Immediately after his death, which occurred on January 15, 1928, Platt turned over the $600 to the congregation pursuant to the directions given him by the intestate, and the sister of the decedent on the day of the funeral delivered to the congregation the $900 in Morris Plan certificates the decedent had set aside for the congregation for the purposes as hereinbefore set forth. The congregation pursuant to his request buried him and painted the synagogue at a cost of $1,000 for the latter.

Objection was made to the testimony of Platt and Pitter on the ground that both of these witnesses are interested in the outcome, being officers of the congregation, and were, therefore, barred from testifying under section 347 of the Civil Practice Act. It appears, however, that they were officers or trustees of this religious congregation, serving without pay, and, therefore, have no personal pecuniary interest in the issue involved, and their testimony was properly received.

While the $600 and the $900 represented by the Morris Plan

certificates were both the subject of the same colloquy and conversations, the former amount, being in the possession of Mr. Platt, one of the representatives of the synagogue in question, passed from decedent as a consummated gift, and as to it there can be no contention about the delivery. As to the $900 represented by Morris Plan certificates, the colloquy was in part as follows: " Q. Did he tell you what he wanted to do with the $1,500? A. Yes. He said he wanted a nice funeral and grave, and Kadish should be said for him, and when you come to the synagogue on a holiday you should make a prayer and say Yiskur. Q. What else did he say? A. Should put up a stone and Yar Zeit should be said for him, and he wanted a tablet in the synagogue — a paper printed out. Every man who dies, his name is on the tablet, and we should remember him as we pray."

I hold that decedent entered into a contract with the synagogue, the conditions being that the building would be fixed up and painted and the name of the deceased placed on a tablet therein, and that the Morris Plan certificates should be turned over to the synagogue for the said purposes. The conditions imposed upon the synagogue have been fulfilled and the contract, therefore, executed, and the synagogue is, therefore, entitled to the money. The discovery proceeding is dismissed.